## HOWARD HALL CO., INC. *v.* UNITED STATES ET AL.

No. 210.   Argued January 16, 19, 1942.—Decided March 2, 1942.

*Mr. Allan Watkins,* with whom *Mr. Edgar Watkins* was on the brief, for appellant.

*Mr. Nelson Thomas,* with whom *Solicitor General Fahy, Assistant Attorney General Arnold,* and *Messrs. Frank Coleman* and *Daniel W. Knowlton* were on the brief, for appellees.

*Mr. James W. Wrape* filed a brief on behalf of the Regular Common Carrier Conference of the American Trucking Associations, Inc., as *amicus curiae,* urging affirmance.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case, like *United States* v. *Carolina Freight Carriers Corp., ante,* p. 475, is an appeal from a district court of three judges (38 F. Supp. 556) convened to review an order of the Interstate Commerce Commission (24 M. C. C. 273) granting appellant a certificate of public convenience and necessity as a common carrier by motor vehicle under the so-called "grandfather clause" (§ 206 (a)) of the Motor Carrier Act of 1935. 49 U. S. C. § 306.

Appellant made application as a common carrier of general commodities operating over irregular routes. It

sought authority to operate between all points in a vast territory comprising most of the country east of the Mississippi River, except the New England states. The Commission authorized the issuance of a certificate but limited it in two respects. (1) It restricted the geographical scope of the operations by authorizing service only from Birmingham, Ala., and all points within a radius of 10 miles from that city, to all points in certain states and to designated points in others. (2) Though it permitted appellant to carry general commodities throughout a large segment of the authorized territory, it limited the kinds of commodities which could be carried between specified points. Its finding containing those restrictions (24 M. C. C., p. 277) reads as follows:

"We find that applicant was, on June 1, 1935, and continuously since that time has been, in bona fide operation, in interstate or foreign commerce, as a common carrier by motor vehicle, of general commodities, except commodities of unusual value, high explosives, commodities in bulk, commodities requiring special equipment, and household goods, uncrated or in lift vans in connection with so-called household movings between Birmingham, Ala., and all points within 10 miles thereof, on the one hand, and, on the other, all points in North Carolina, Georgia, Mississippi, and South Carolina, and those in Florida on and north of a line consisting of U. S. Highway 92 from Tampa to Kissimmee, thence U. S. Highway 192 to Melbourne, of paper and paper products from Birmingham to New Orleans, La., and Chattanooga and Knoxville, Tenn., and from Kingsport, Tenn., to Birmingham, of nails, pipe, pipe fittings, steel, and metal ceilings from Canton, Ohio, to Birmingham, of cloth from Alabama City, Ala., to Wheeling, W. Va., and of matches from Wheeling to Chattanooga and Birmingham, all over irregular routes; that by reason of such operation it is

entitled to a certificate authorizing the continuance thereof; and that the application in all other respects should be denied."

The District Court refused to enjoin enforcement of the order and dismissed the complaint. The errors urged here do not relate to the substantiality of the evidence in support of the findings. They involve two questions: (1) whether the Commission was warranted in limiting shipments to and from points located within a 10 mile, rather than a 100 mile, radius of Birmingham; and (2) whether the Commission erred in limiting the operating rights of appellant to the transportation of only a few commodities between certain points.

I. We perceive no error in the limitation which the Commission made on the territorial scope of appellant's operations.

Appellant argues that if it may be authorized to serve all points in one state, say Georgia, without showing that every point in Georgia had been previously served by it, then it must be granted like authority as respects the 100 mile radius around Birmingham. That is a *non sequitur*. Prior operations to several points in a region may or may not justify the Commission in authorizing service throughout the whole region. The precise geographical pattern for future operations is the product of an expert judgment based on the substantiality of the evidence as to prior operations, the characteristics of the particular type of carrier, the capacity or ability of the applicant to render the service, and the like. *Alton R. Co.* v. *United States,* 315 U. S. 15; *United States* v. *Carolina Freight Carriers Corp., supra.* The Commission employed those standards in limiting the territorial scope of appellant's operations. We cannot say that its reduction of the Birmingham area from a radius of 100 miles to a radius of 10 miles was unjustified. The Commission found that

only 55 shipments were transported prior to June 1, 1935, to or from points within 100 miles of Birmingham, as against 875 to or from that city. Only 12 points were served in that large area. After June 1, 1935, 270 shipments moved to or from points within 100 miles of Birmingham, as against 2,030 to or from that city. The Commission reduced the radius to 10 miles in an endeavor to include only the important industrial area surrounding that city. If we were to enlarge that area, we would clearly usurp a function which Congress entrusted to the Commission. Nor can that finding be assailed because permission to serve all points in other areas was allowed. Such a difference in treatment plainly is not erroneous as a matter of law. And nothing has been called to our attention which would even suggest that the record of prior operations or the characteristics of this transportation enterprise precluded the Commission from restricting the territory where shipments mainly originate while being more liberal as respects the territory where destination points are located.

II. We take a different view as respects the limitation on commodities which the Commission imposed in case of shipments between specified points. We do not say that that limitation was unjustified. We merely hold that in this case, as in *United States* v. *Carolina Freight Carriers Corp.*, *supra*, the basic or essential findings to support that part of the order are lacking. The Commission's conclusion that appellant was authorized to transport general commodities between Birmingham and vicinity on the one hand, and all points in designated areas on the other, was based on its finding that prior to and since June 1, 1935, appellant "held itself out to transport general commodities" in that territory and "actually conducted an operation consistent with such holding out." But in case of the limitation which it imposed on the

shipment of certain commodities it merely found that "prior to and since June 1, 1935, applicant transported paper and paper products from Birmingham to New Orleans, La., and Chattanooga and Knoxville, Tennessee, and from Kingsport, Tenn., to Birmingham; nails, pipe, pipe fittings, steel, and metal ceilings from Canton, Ohio, to Birmingham; cloth from Alabama City, Ala., to Wheeling, W. Va., and matches from Wheeling to Chattanooga and Birmingham."

As we indicated in *United States v. Carolina Freight Carriers Corp., supra,* if the applicant had established that it was a "common carrier" of general commodities during the critical periods in a specified territory, restrictions on commodities which could be moved between specified points in that territory would not be justified. The mere fact that particular commodities had never been transported between designated points in that territory would not mean that authority to haul them between such points should be withheld. On the other hand, an applicant's status may vary from one part of the territory to another. As respects carriage between designated points, the applicant may have restricted its undertaking to particular commodities. It is not clear, however, that the Commission applied those tests in this case. From all that appears, it may have allowed only paper and paper products to be shipped from Birmingham to New Orleans merely because paper and paper products were the only commodities previously carried between those cities. It is true that the Commission quoted from Reliance Trucking Co., Inc., 4 M. C. C. 594, 595, to the effect that the question is whether there has been an operation within the critical periods consistent with the holding out in the natural and normal course of business, and that a mere holding out without evidence of an operation consistent therewith is not enough. Yet it also seems to have placed considerable

reliance on Powell Brothers Truck Lines, Inc., 9 M. C. C. 785, 791–792, which we have discussed in *United States* v. *Carolina Freight Carriers Corp.*, *supra,* and which apparently treats irregular route carriers differently in this regard from regular route carriers. Since the influence of that view seems to have permeated the findings, we conclude that here, as in *United States* v. *Carolina Freight Carriers Corp.*, *supra,* the case should be remanded to the Commission so that the basic or essential findings required under the rule of *Florida* v. *United States,* 282 U. S. 194, 215, may be made.

*Reversed.*

MR. JUSTICE FRANKFURTER and MR. JUSTICE JACKSON dissent for the reasons stated in their dissenting opinion in *United States* v. *Carolina Freight Carriers Corp., ante,* p. 475.