**TURNER et al. v. UNITED STATES et al.**
Civil Action No. 219 G.

District Court, M. D. North Carolina,
Greensboro Division.

Aug. 1, 1944.

Judgment Affirmed Nov. 13, 1944.

See 65 S.Ct. 130.

William M. York, of Greensboro, N. C., and LaFayette C. Dotson and Edgar Watkins, both of Atlanta, Ga., for Turner's Transfer.

Edward Dumbauld, Sp. Asst. to Atty. Gen., Wendell Berge, Asst. Atty. Gen., and Carlisle W. Higgins, U. S. Atty., Bryce R. Holt, Asst. U. S. Atty., both of Greensboro, N. C., for the United States.

Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, and Edward M. Reidy, Asst. Chief Counsel, Interstate Commerce Commission, both of Washington, D. C., for Interstate Commerce Commission.

Before PARKER, Circuit Judge, and WEBB and HAYES, District Judges.

HAYES, District Judge.

This is a suit under 28 U.S.C.A. §§ 43–48 to set aside and enjoin an order of the Interstate Commerce Commission granting to the applicant a certificate of necessity for less territory and restrictions as to commodities less than that for which he applied. The findings in the report of the Commission were made by Division 5 of the Commission on December 30, 1943, No. M.C. 66691. The Commission had made a prior report, 27 M.C.C. 131.

For convenience the territory applied for and refused and the commodities applied for and refused will be enclosed in parenthesis. The application under the "grandfather clause" sought a certificate of public convenience as common carrier over irregular routes of, (1) general commodities (a) between points in North Carolina, South Carolina, and Virginia and (b) between points in those three states, on the one hand, and, on the other, points in Georgia, Alabama, Tennessee, West Virginia, Ohio, Indiana, Illinois, Michigan, Pennsylvania, Maryland, District of Columbia, Delaware, New York, New Jersey, Connecticut, Rhode Island, and Massachusetts (the Commission granted the petition to the extent of territory of points in Guilford, Randolph, Chatham and Alamance Counties, North Carolina, on the one hand, and, on the other, Philadelphia, Pa., Baltimore, Md., and all points in Ohio traversing West Virginia and District of Columbia for operating convenience, and (5) empty containers, skids, and rejected or damaged shipments from and to the foregoing points in either direction); (2) of household goods between points in North Carolina, on the one hand, and, on the other, points in Alabama, Georgia, South Carolina, Tennessee, Virginia, West Virginia, Ohio, Indiana, Illinois, Michigan, Pennsylvania, Maryland, District of Columbia, Delaware, New Jersey, New York, Connecticut, Rhode Island, and Massachusetts, and (3) of machinery, construction materials and other heavy or bulky commodities requiring the use of special equipment between points in (Alabama), (Georgia), (South Carolina), North Carolina, (Tennessee), (Virginia), (West Virginia), (Ohio), (Indiana), (Michigan), (Illinois), (District of Columbia), (Maryland), (Delaware), (Pennsylvania), (New Jersey), (New York), (Connecticut), (Rhode Island), and (Massachusetts). The Commission allowed the application between points in North Carolina, on the one hand, and, on the other, points in Alabama, Georgia, South Carolina, Tennessee, Virginia, West Virginia, Ohio, Michigan, Indiana, Illinois, Pennsylvania, Delaware, Maryland, New Jersey, New York, Connecticut, Massachusetts, Rhode Island, and District of Columbia, and empty machinery cases (wooden boxes) from all points in North Carolina to Reading, Pa.

With respect to general commodities the Commission analyzed the evidence thoroughly and said:

"In our opinion the Greensboro area is the only area which was served substantially prior to the statutory date with a sufficient variety of commodities to establish a general commodity service * * * we conclude that applicants have been in bona fide operation prior to June 1, 1935 and continuously since, from and to points in Guilford, Randolph, Chatham and Alamance counties in North Carolina and that these four counties constitute the base area served by applicants in the transportation of general commodities."

The Commission further stated:

"Although the operations conducted prior to June 1, 1935 may have been more extensive than those authorized herein, applicant can not be granted 'grandfather rights' to serve points and areas which, according to the complete evidence of operations since the statutory date, have not been served substantially and continuously since that time. In reaching this conclusion we have been guided by the principles announced by the Supreme Court in United States v. Carolina Freight Carriers Corporation, 315 U.S. 475 [62 S.Ct. 722, 86 L.Ed. 971]."

At the second hearing the Commission considered all of the evidence that had been produced including the evidence that was produced at the first hearing. Its findings of fact are in line with what has been stated above and to avoid undue length they will not be restated here.

The complainant contends that the findings of the Commission necessitate

a reversal because of an erroneous application of the law to the facts found; that irregular routes necessarily negative continuity, that substantial and continuous service from June 1, 1935, to the filing of the petition do not apply to carriers over irregular routes; that the Commission's ruling would require a carrier to go regardless of whether he had freight to haul and relies on Thomson v. United States, 321 U.S. 19, 64 S.Ct. 392, 395, to sustain his confention. The facts in that case were not disputed. The Supreme Court said:

"The railroad alone is entitled to common carrier 'grandfather' rights as to the motor vehicle service forming an integral part of its unified freight service. Any other conclusion would authorize the wholesale granting of twenty-three 'grandfather' permits to the various motor vehicle operators on the basis of this single transportation service offered by the railroad—a result which ascribes to Congress 'an intent incompatible with its purpose of regulation.'"

The substantiality and continuity of service was not in dispute. The Commission had held that the railroad was not entitled to the certificate because it had procured the service to be rendered by twenty-three independent truck contractors. We are unable to find anything in that case which sustains the complainant here. Nor does United States v. Carolina Carriers Corporation, 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; Carolina Freight Carriers Corp. v. United States, D. C., 38 Fed.Supp. 549, help complainant. The Commission applied the law of that case in its disposition of the application here. That case involved a carrier over irregular routes. As to the power of the Commission to limit the territorial scope of operations, the Court there said [315 U.S. 475, 62 S.Ct. 726, 86 L.Ed. 971]:

"While service to and from all points in the States included in the application was not allowed, the reduction was determined by the standard of substantiality of service and consideration was given to the characteristics of irregular route carriers and their role in the national transportation system. That involved a weighing of specific evidence in light of the complexities of this transportation service. The judgment required is highly expert. Only where the error is patent may we say that the Commission transgressed."

Measured by this standard, the instant case as to the scope of territory, is peculiarly one for the Commission. We find no error in this regard.

In Bush Transfer, Inc. v. United States, 53 F.Supp. 640, 643, this court had occasion to consider the construction of the statute with respect to carriers over irregular routes as to territorial scope and restrictions on commodities and Senior Circuit Judge Parker said:

"With respect to the limitation of commodities authorized to be carried in northbound transportation, we think that this, as well as points to be served, was a matter to be determined by the Commission in application of the standard of substantiality of service within the critical period. The record discloses that, notwithstanding a somewhat broader holding out, the northbound service of plaintiff during the critical period had been confined to the transportation of new furniture, and we think that the Commission was acting in the proper exercise of its power in limiting authority under the certificate accordingly. As said by the Supreme Court in United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 483, 62 S.Ct. 722, 727, 86 L.Ed. 971: 'It is plain that a carrier's holding out and actual performance may be limited to a few articles only. That is to say he may be a common carrier only of a restricted number of commodities.'"

The evidence in the record affords a reasonable basis to sustain the findings of the Commission both as to territorial scope and commodities to be carried. Congress conferred upon the Commission the power to form its judgment and to enter appropriate orders. There is no error justifying this court to set the order aside.

From what has been said it is not necessary to devote more comment on the contention that the Commission erred by requiring continuity of service after June 1, 1935. It is urged here that the statute does not require continuity subsequent to June 1. The Act, 49 U.S.C. § 306, 49 U.S.C.A. § 306, directs the Commission to issue a certificate of necessity to a carrier who "was in bona fide operation as a common carrier by motor vehicle on June 1, 1935 * * * and has so operated since that time * * * except * * * interruptions of service over which the applicant * * * had no control." Bona fide operation as a common carrier means substantial as distinguished from occasional or sporadic service. United States v. Caro-

lina Freight Carriers Corp., supra. The phrase "and has so operated since that time" means continued bona fide operation as a common carrier. If substantial service prior to June 1 is essential to the granting of the certificate, it follows that the carrier must continue in that bona fide operation if he secures a certificate. To hold otherwise would delete from the Act the words "and has so operated since that time." This the court will not do. It is therefore the duty of the commission to consider the evidence and to determine from it whether there was bona fide operation as a common carrier before June 1, 1935; if so, whether that bona fide operation continued since that time. These are questions of fact for the determination of the Commission from the evidence produced. The weight of that evidence is for the Commission not the courts. The evidence here is substantial, supports the findings and no error of law is discovered to vitiate the findings.

For the reasons stated the injunction will be denied and the suit dismissed.

Injunction denied and suit dismissed.