**A. B. & C. MOTOR TRANSPORTATION CO., Inc., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Civ. No. 54–587.

United States District Court, D. Massachusetts.

April 1, 1955.

88

James Julian Weinstein, Boston, Mass., Francis E. Barrett, Boston, Mass., of counsel, for plaintiff.

Anthony Julian, U. S. Atty., and Lawrence B. Urbano, Asst. U. S. Atty., Boston, Mass., Stanley N. Barnes, Asst. Atty. Gen., James E. Kilday and Maurice A. Fitzgerald, Sp. Assts. to Atty. Gen., for defendant, United States.

Herman E. Meuller, Interstate Commerce Commission, Boston, Mass., Ed-

ward M. Reidy, Gen. Counsel and Leo H. Pou, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., of counsel, for defendant, Interstate Commerce Commission.

Before HARTIGAN, Circuit Judge, and SWEENEY and FORD, District Judges.

HARTIGAN, Circuit Judge.

This is an action brought by the plaintiff, a Massachusetts corporation engaged as a common carrier of property by motor vehicle, to set aside an order of the Interstate Commerce Commission entered November 10, 1953, in No. MC 72418 interpreting the certificate of public convenience and necessity issued to the plaintiff on May 22, 1941. The Commission on June 21, 1954, denied the plaintiff's petition for reconsideration of the Commission's order and this action was filed in this Court on July 27, 1954.

The certificate in question granted to the plaintiff a regular route authority between Worcester, Mass., and New Haven, Conn., over certain specific routes and in connection with this regular route authority stated that: "Service is authorized to and from the intermediate points of Providence, and those between Worcester and Providence; the off-route points of Mystic, Conn., and those in Massachusetts within 10 miles of Worcester; and the intermediate and off-route points in Rhode Island within 10 miles of Providence."

The plaintiff admits that it has served Quonset Point, R. I., which is 12½ miles from Providence during and since World War II. Quonset Point is located in the Town of North Kingstown and part of North Kingstown is within 10 miles of Providence. The plaintiff contended in its petition to the Commission that a certificate authorizing service at a particular municipality should be construed as authorizing service at all points within such municipality. The Commission in response to the plaintiff's petition construed the above quoted language with respect to intermediate points as author-

izing service to the commercial zone of any municipality or unincorporated community (not including New England-type towns) all or any part of which is within ten miles of Providence and which is located on an authorized route. North Kingstown is not on an authorized route and therefore it does not come within the category of intermediate points. The Commission further construed the certificate with respect to off-route points as being specifically territorial in character and authorizing service only to points in the defined area, including only those portions of such municipalities or communities which are situated within said area.

█ The plaintiff contends that the Commission's order was arbitrary, capricious and unwarranted as a matter of law. In reviewing an order of the Interstate Commerce Commission the court must not usurp the function of the Commission as "The precise delineation of the area or the specification of localities which may be serviced has been entrusted by the Congress to the Commission." U. S. v. Carolina Freight Carriers Corp., 1942, 315 U.S. 475, 480, 62 S.Ct. 722, 726, 86 L.Ed. 971. The court may not substitute its judgment for that of the Commission with respect to the determination of the scope or coverage of a certificate of convenience and necessity unless the Commission's construction of the certificate is clearly wrong or arbitrary. Dart Transit Co. v. Interstate Commerce Commission, D.C.D.Minn.1953, 110 F. Supp. 876, affirmed 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394; United Truck Lines v. Interstate Commerce Commission, 9 Cir., 1951, 189 F.2d 816; Adirondack Transit Lines v. United States, D.C. S.D.N.Y.1944, 59 F.Supp. 503, affirmed 1945, 324 U.S. 824, 65 S.Ct. 688, 89 L. Ed. 1393.

█ The Commission's decision in the instant case does not appear to be arbitrary or capricious in the light of its previous decisions in Transportation Activities of Tornetta, 48 M.C.C. 637 and Commercial Zones and Terminal Areas,

Ex Parte No. MC–37, 46 M.C.C. 665, 48 M.C.C. 418 and 54 M.C.C. 21. The Commission held in the Tornetta case that a carrier which was authorized to transport general commodities between Norristown, Pa., and Newark, N. J., over two regular routes serving all intermediate points and as off route points, all points within ten miles of Norristown and Newark, respectively, could not serve all of Philadelphia nor all of New York City despite the fact that part of Philadelphia was within 10 miles of Norristown and part of New York City was within 10 miles of Newark. The Commission stated at pp. 640, 641 of its Tornetta opinion that:

"Since the inception of Federal regulation, numerous motor carriers have been granted authority to serve areas surrounding a particular base point. These territorial grants of authority are frequently defined in terms of definite distances or radii about a given base point. The use of distance in defining authorized areas, though not so satisfactory and definite as the use of boundaries of political subdivisions and numbered or unnumbered highways, was in many instances the only means of describing the limits of past service with reasonable accuracy. We have been, and still are, cognizant of the fact that any area, no matter how defined, may embrace a portion or portions of cities, towns, or other incorporated municipalities. Nevertheless, it has been our opinion, aside from the foreseeable difficulties incidental to an exact description of an area, that territorial grants of authority defined by a definite distance from a base point are practical from the standpoint of motor carriers and the public.

\* \* \* \* \* \*

"\* \* \* In our opinion, the description of the territory in the certificates held by these carriers, though possibly illogical insofar as it splits cities, streets, and industrial areas, is, nevertheless, clear and definite so that it leaves no doubt as to the extent of the authority granted. When a city, town, or other incorporated municipality is traversed by the boundary line of a territorial grant of authority, only that part of the city, town, or other incorporated municipality may be served. Whatever illogic there is in this result is cured by the fact that generally the radial distances were chosen with such liberality as to allow everything which had been justified. \* \* \*"

That the Commission has the authority to grant territorial authority defined in terms of definite distances or radii about a given basepoint is supported by the decision of the Supreme Court in Howard Hall Co. v. U. S., 1942, 315 U.S. 495, 498, 499, 62 S.Ct. 732, 734, 86 L.Ed. 986, wherein Justice Douglas stated, with reference to a Commission decision authorizing a carrier to carry on operations from Birmingham, Alabama, and all points within a radius of ten miles from that city, that "The precise geographical pattern for future operations is the product of an expert judgment based on the substantiality of the evidence as to prior operations, the characteristics of the particular type of carrier, the capacity or ability of the applicant to render the service, and the like. \* \* \* We cannot say that its reduction of the Birmingham area from a radius of 100 miles to a radius of 10 miles was unjustified. \* \* \* The Commission reduced the radius to 10 miles in an endeavor to include only the important industrial area surrounding that city. If we were to enlarge that area, we would clearly usurp a function which Congress entrusted to the Commission." Similarly, if we were to hold that the plaintiff is entitled to serve Quonset Point we would be usurping the function of the Commission for we would be in effect determining that the radius of the plaintiff's authorized territory should be more than 10 miles although the Commission had previously deter-

mined such radius should be no more than 10 miles.

■ The plaintiff also contends that the Commission's construction of the certificate neglects the distinction that Congress intended to be drawn between line-haul services and local collection and delivery services. This contention would seem to be based on the premise that although the Commission can regulate the point to point line-haul services of a motor carrier either over a regular or irregular route that Congress did not undertake to subject to federal regulation, with exceptions not pertinent here, transfer, collection or delivery service within the terminal area of the carrier. 49 U.S.C.A. § 302(c) (2), 54 Stat. 920 (1940) as amended.[1] The Commission in applying the law has stated in Ex parte No. MC–37, 54 M.C.C. 21, 61: "However, in the case of carriers required to hold operating authority from this Commission, such services cannot lawfully be performed to or from any point which the carrier is not authorized to serve. Accordingly in the case of motor carriers * * * we must add the further condition that their terminal areas may not at any point extend beyond the particular carrier's * * * operating authority." In Arrowhead Freight Lines v. United States, D.C.S.D.Cal.1953, 115 F.Supp. 537, the court agreed with the reasoning of the Commission and said that the carrier could not serve Las Vegas, Nevada, with exempted collection or delivery service because such service could not be rendered as an incident to the carrier's authorized line-haul operations in view of the certificate's plain language forbidding service to Las Vegas.

In the instant case the plaintiff is expressly authorized to serve only territory within ten miles of Providence and collection and delivery service to a point outside the authorized territory could not be rendered as an incident to the plaintiff's authorized operations. The Commission's construction of the plaintiff's certificate is thus not inconsistent with the requirements of 49 U.S.C.A. § 302(c) (2).

■ The plaintiff also contends that the Commission's order interpreting its certificate is contrary to the requirements of 49 U.S.C.A. § 303(b) (8), 49 Stat. 545 (1935)[2]. The Commission has

---

1. "§ 302. *Application of provisions*

     *      *      *      *      *

"(c) Notwithstanding any provision of this section or of section 303 of this title, the provisions of this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation and equipment, shall not apply—

     *      *      *      *      *

"(2) to transportation by motor vehicle by any person (whether as agent or under a contractual arrangement) for a common carrier by railroad subject to chapter 1 of this title, an express company subject to chapter 1 of this title, a motor carrier subject to this chapter, a water-carrier subject to chapter 12 of this title, or a freight forwarder subject to chapter 13 of this title, in the performance within terminal areas of transfer, collection, or delivery service; but such transportation shall be considered to be performed by such carrier, express company, or freight forwarder as part of, and shall be regulated in the same manner as, the transportation by railroad, express, motor vehicle, or water, or the freight forwarder transportation or service, to which such services are incidental."

2. 49 U.S.C.A. "§ 303. *Definitions and exceptions*

     *      *      *      *      *

"*Vehicles excepted from operation of law*

"(b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * *; nor, unless and to the extent that the Commission shall from time to time find that such application is necessary to carry out the national transportation policy declared in the Interstate Commerce Act, shall the provisions of this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment apply to: (8) The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous munici-

indicated in Ex Parte No. MC–37, 46 M.C.C. 665, 679, 680, that it will not classify towns of the township or New England type as having the status of municipalities within the meaning of this statute, and the Commission argues that North Kingstown‧ is such a New England type town. The plaintiff contends that such an interpretation of the statute is unwarranted but we shall not deal with this particular aspect of 49 U.S.C.A. § 303(b) (8) as the Commission in its order has made no finding that North Kingstown is such a New England type town but rather has chosen to base its decision solely on the principle of the Tornetta case. The Commission's finding upon which the instant case revolves is "* * * that the authority to serve off-route points within ten miles of Providence is specifically territorial in character and authorizes operations to and from off route points in the area defined, including only those portions of such municipalities or communities which are situated within said area. * * *" This finding is essentially similar to that made in the Tornetta case.

The Commission in its reports has set forth its position on the interpretation of certificates such as involved in the instant case. In its Third Supplemental Report in Ex Parte No. MC–37, 48 M. C.C. 418, 438, the Commission stated that a certificate authorizing service at a particular municipality should be construed as authorizing service at all points or places within the commercial zone of the municipality, but "* * * not beyond the territorial limits, if any, fixed in such certificate or permit. * * *" In its Sixth Supplemental Report in Ex Parte No. MC–37, 54 M.C.C. 21, the Commission stated at p. 63:

"* * * We agree with the findings in the prior report that the limits of bona fide collection and delivery services of motor common carriers at any particular municipality are coextensive with the limits of the commercial zone of that municipality as defined by this Commission.

"But, as seen, collection and delivery services even though bona fide may be limited by limits on the carrier's operating authority. A priori, collection and delivery service cannot lawfully be given, any more than line-haul service, to a point not authorized to be served, or to a point, 'beyond' the limits of the carrier's authority, however close, even within the same municipality."

and at p. 92:

"* * * operating authorities which are definitely limited to particular territory cannot under any circumstances be construed as implied authority to serve in any way any points or places which are, in fact, beyond the described limits of the authority granted, even though such a point or place is contiguous, or so adjacent, to a municipality located in authorized territory as to be within the commercial zone thereof."

It would appear from the language of these reports that if the certificate had been limited to Providence, and North Kingstown had been located in the commercial zone of Providence, then the plaintiff would be authorized to serve Quonset Point. But because the Commission has specifically restricted the authority to off-route points within 10 miles of Providence, the Commission rightly insists that there can be no serv-

palities or within a zone adjacent to and commercially a part of any such municipality or municipalities, except when such transportation is under a common control, management, or arrangement for a continuous carriage or shipment to or from a point without such municipality, municipalities, or zone, and provided that the motor carrier engaged in such trans-

portation of passengers over regular or irregular route or routes in interstate commerce is also lawfully engaged in the intrastate transportation of passengers over the entire length of such interstate route or routes in accordance with the laws of each State having jurisdiction; * * *."

ice of any nature to any points beyond this 10 mile limit even though such points may be within a municipality, a portion of which is within the 10 mile radius.

It is appropriate to point out that according to the standards formulated by the Commission to be used in the determination of commercial zones which are set forth in Ex Parte No. MC–37, 46 M.C.C. 665, 698, 699, it would appear that North Kingstown could not possibly be a part of the Providence commercial zone. Therefore, because the plaintiff is now entitled to carry out operations to at least a part of North Kingstown, he is in a better position than if he had received only specific authority to serve Providence, and it would thus seem that this case falls within the scope of the language used in the Tornetta case where the Commission stated that when radial distances were employed in certificates the "* * * distances were chosen with such liberality as to allow everything which had been justified. If it had been intended to authorize each of these carriers to serve all or any portion of any city, town or incorporated municipality beyond the boundary of the definite territorial grant, some other language would have been employed." Transportation Activities of Tornetta, supra, 641. The Commission had previously stated that the use of distance was in many instances the only means of describing the limits of past service with reasonable accuracy. Id. at 640.

In fact some language in the Tornetta case, supra, at p. 643, reiterated in the Sixth Supplemental Report of Ex Parte No. MC–37, 54 M.C.C. 21, 94, indicates that under the type of certificate issued to the plaintiff, there was granted a specific authority to serve Providence and a territorial authority to serve off route points within 10 miles of Providence. In any event, we are not concerned with defining the commercial zone of Providence but rather with the problem of whether the Commission unlawfully interpreted the certificate in

question. We do not think that the Commission's construction was arbitrary and capricious as it had fully discussed in the Tornetta case and in the Ex Parte No. MC–37 proceedings the point involved and clearly found that operating authority which is definitely limited to particular territory cannot under any circumstances be construed as implied authority to serve in any way any points or places which are in fact beyond the described limits of the authority granted. The result reached in the Tornetta case was within the scope of the statute. The general principles enunciated therein and in Ex Parte No. MC–37 with regard to territorial authority were lawfully applied by the Commission in the instant case.

An order will be entered denying the relief sought by the plaintiff and dismissing its complaint.