**COLONIAL REFRIGERATED TRANS-PORTATION, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 64–651.**

United States District Court
N. D. Alabama, S. D.

June 27, 1966.

---

James H. Hancock, Harold Bowron, Jr., Martin, Balch, Bingham & Hawthorne and John P. Carlton, Bishop & Carlton, Birmingham, Ala., for plaintiff.

Donald F. Turner, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Macon L. Weaver, U. S. Atty., Birmingham, Ala., for the United States.

Robert W. Ginnane, Gen. Counsel, and Betty Jo Christian, Atty., I.C.C., Washington, D. C., for Interstate Commerce Commission.

Before GEWIN, Circuit Judge, and LYNNE and GROOMS, District Judges.

## PER CURIAM:

Invoking the jurisdiction of this court under the provisions of 28 U.S.C.A. sections 1336, 1398, 2284, 2321 to 2325, 49 U.S.C.A. sections 17(9), 305(g), 305(h), and 5 U.S.C.A. section 1009, plaintiff brought this action to enjoin, set aside and annul decisions and orders of the Interstate Commerce Commission (Commission), entered July 21, 1961, October 17, 1961, February 28, 1964, September 9, 1964, and August 5, 1965, as modified by order of December 3, 1965, in its Docket No. MC–115841 (Sub-No. 48) Colonial Refrigerated Transportation, Inc., Common Carrier "Grandfather" Application.[1] The effect of these orders was to deny in part plaintiff's application under the "grandfather" clause of the Transportation Act of 1958, section 7(c), 49 U.S.C.A. section 303(b) (6),[2] to transport as a common carrier over irregular routes frozen fruits, frozen berries, frozen vegetables, coffee beans, and bananas in straight loads and in mixed loads with frozen seafoods and frozen poultry from points in twenty-seven states to points in thirty-nine states and the District of Columbia.[3]

By stipulation of the parties this action was submitted upon plaintiff's prayer for final relief and upon the record made before the Commission. The limited scope of judicial review to which the parties are entitled enables

1. —— M.C.C. ——.

2. Section 7(c) of the Transportation Act of 1958 in pertinent part provided:
   (c) Subject to the provisions of section 210 of the Interstate Commerce Act, if any person (or its predecessor in interest) was in bona fide operation on May 1, 1958, over any route or routes or within any territory, in the transportation of property for compensation by motor vehicle made subject to the provisions of part II of that Act by paragraph (a) of this section, in interstate or foreign commerce, and has so operated since that time * * * except * * * as to interruptions of service over which such applicant or its predecessor in interest had no control, the Interstate Commerce Commission shall without further proceedings issue a certificate or permit, as the type of operation may warrant, authorizing such operations as a common or contract carrier by motor vehicle if application is made to the said Commission as provided in part II of the Interstate Commerce Act and within one hundred and twenty days after the date on which this section takes effect.

3. The states to and from which plaintiff sought authority are listed in the Report of the Commission on Reconsideration, p. 2, n. 2 & 3.

us to compress the antecedent history of proceedings following the filing of such application.[4]

The Examiner recommended that plaintiff be granted severely limited point-to-point authority for the transportation of the involved commodities. In an order served August 1, 1961, the Commission broadened the scope of authority to be granted,[5] but is fell far short of that claimed by plaintiff. Multiple petitions for reconsideration were filed by plaintiff and denied by the Commission before the institution of this action on November 3, 1964.

In the interval between August 1, 1961 and November 3, 1964, other section 7(c) Commission decisions were reversed by district courts which concluded that, upon the facts of those cases, the limited grants of authority were based on restrictive views concerning operations conducted prior to the critical date, May 1, 1958, and on an erroneous

4. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 482, 62 S.Ct. 722, 86 L.Ed. 971, (1942); Ala. G. S. Ry. v. United States, 162 F.Supp. 614, 617 (N.D.Ala.1958); Motor Freight Express v. United States, 119 F.Supp. 298, 303 (D.Pa.1954).

5. The authority granted to Colonial by the order served August 1, 1961 is to engage as a common carrier by motor vehicle, in interstate or foreign commerce, over irregular routes of:

(1) Frozen berries, frozen fruits and frozen vegetables:

(A) From Exmore, Virginia to points in Ohio and to Mobile and York, Alabama, South Bend and Indianapolis, Indiana, New Orleans and Baton Rouge, Louisiana, Minneapolis, Minnesota, Jackson, Mississippi, Carnegie, Pennsylvania, Nashville, Tennessee and Charleston, West Virginia;

(B) From Holley, New York to Little Rock, Arkansas, Metairie and Shreveport, Louisiana and Charleston, South Carolina;

(C) From Baltimore, Maryland to Birmingham, Alabama and Atlanta, Georgia; and

(D) From Nashville, Tennessee to points in Alabama, Florida, Mississippi and to Little Rock, Arkansas, Atlanta, Georgia, Chicago, Illinois, Elkhart, Indiana, New Orleans and Shreveport, Louisiana, Detroit, Michigan, Butner, North Carolina, Cleveland and Cincinnati, Ohio, Philadelphia and Pittsburgh, Pennsylvania, Houston, Texas, Richmond, Virginia and Huntington, West Virginia;

(2) Frozen fruits and frozen vegetables:

(A) From Seabrook, New Jersey to points in Massachusetts, Tennessee and to Birmingham, Alabama, Little Rock, Arkansas, Chester and Hartford, Connecticut, Atlanta and Columbus, Georgia, Louisville, Kentucky, New Orleans, Louisiana, Cleveland, Ohio, Providence, Rhode Island, Burlington, Vermont and Charleston, West Virginia; and

(B) From Birmingham, Alabama to New Orleans, Louisiana and Memphis, Tennessee;

(3) Frozen berries from Frankfort, Michigan to Dallas, Texas;

(4) Frozen fruits:

(A) From Winchester, Virginia to Webster City, Iowa;

(B) From Bear Lake, Michigan to New Orleans, Louisiana and Dallas and Houston, Texas; and

(C) From Benton Harbor, Michigan to Dallas, Texas;

(5) Frozen vegetables:

(A) From Philadelphia, Pennsylvania to Louisville, Kentucky and Charleston, West Virginia;

(B) From Bridgeville, Delaware to New Orleans, Louisiana and Jackson, Mississippi;

(C) From Memphis, Tennessee to Little Rock, Arkansas, Raleigh and Charlotte, North Carolina, and Exmore, Virginia;

(D) From Norfolk, Virginia to New Orleans, Louisiana and Jackson, Mississippi;

(E) From Searcy, Arkansas to points in New York and to New Haven, Connecticut, Watertown, Massachusetts, Baltimore, Maryland, Greensboro, North Carolina and Scranton and Philadelphia, Pennsylvania; and

(F) From Houston, Delaware to Memphis and Nashville, Tennessee and Houston, Texas;

(6) Coffee from New York, N. Y. to Chattanooga, Tennessee; and

(7) Bananas from New Orleans, Louisiana to Nashville, Tennessee.

interpretation of the applicable law.[6] Finally, on May 4, 1964, the Supreme Court, in Willis Shaw Exp. v. United States, 377 U.S. 159, 84 S.Ct. 1154, 12 L.Ed.2d 211 (1964), admonished the Commission to measure section 7(c) applications by the standards explicated in United States v. Carolina Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942), in construing the cognate provisions of section 206(a) of the Motor Carrier Act of 1935 (49 U.S.C.A. § 306).

After the filing of the complaint herein, and before an answer had been filed by defendants, the Commission, on its own motion, issued an order, served December 16, 1964, authorizing plaintiff, within forty-five days, to file a petition for reconsideration specifying, by commodities and routes or territories, the additional authority to which it claimed to be entitled. Such a petition was filed on February 23, 1965 and the final report and order of Division 1, acting as an appellate division, was issued on August 19, 1965. This report and order, as modified by the order of December 10, 1965, granted plaintiff substantially greater authority than had previously been awarded,[7] but denied a

6. Winter Garden Co. v. United States, 211 F.Supp. 280 (E.D.Tenn., 1962); Jarman v. United States, 219 F.Supp. 108 (D.Md. 1963); Frozen Food Express v. United States, 219 F.Supp. 131 (N.D.Tex.1963), and Hale Distributing Co. v. United States, 221 F.Supp. 266 (S.D.Calif.1963).

7. The authority granted by the order of August 19, 1965, as modified by the order of December 10, 1965, is for the transportation, over irregular routes, of:
   (1) Frozen fruits, frozen berries and frozen vegetables:
   (A) From points in the lower peninsula of Michigan to points in Texas, Nashville, Tennessee, Birmingham, Alabama, Jacksonville, Florida, New Orleans, Louisiana, Jackson, Mississippi, Tulsa and Oklahoma City, Oklahoma and points in that portion of Pennsylvania on and south of that portion of U. S. Highway 22 extending between the Ohio-Pennsylvania state line and Harrisburg, Pennsylvania and on and west of that portion of U. S. Highway 15 extending between Harrisburg and the Pennsylvania-Maryland state line;
   (B) From points in Tennessee to points in Alabama, Florida, Mississippi, New York and to Little Rock, Arkansas, Atlanta, Georgia, Chicago, Illinois, Elkhart, Indiana, New Orleans and Shreveport, Louisiana, Detroit, Michigan, Jersey City and Seabrook, New Jersey, Raleigh, Charlotte and Butner, North Carolina, Canton, Cleveland and Cincinnati, Ohio, Philadelphia and Pittsburgh, Pennsylvania,

   Houston, Texas, Exmore, Norfolk and Richmond, Virginia and Huntington, West Virginia.
   (C) From points in New York to Birmingham, Alabama, Little Rock, Arkansas, Atlanta, Georgia, Greensboro, North Carolina, Metairie and Shreveport, Louisiana, Charleston, South Carolina, and Memphis, Tennessee;
   (D) From points in Maryland on and east of U. S. Highway 1 to Birmingham and Mobile, Alabama, and Albany and Atlanta, Georgia;
   (E) From points in Virginia on and east of U. S. Highway 220 to points in North Carolina and Ohio, and to Mobile and York, Alabama, South Bend and Indianapolis, Indiana, Webster City, Iowa, New Orleans and Baton Rouge, Louisiana, Detroit, Michigan, Minneapolis, Minnesota, Jackson, Mississippi, Carnegie, Pennsylvania, Nashville, Tennessee and Charleston, West Virginia;
   (F) From Seabrook, New Jersey to points in Georgia, Massachusetts, Ohio, Tennessee and Texas, and to Birmingham and Mobile, Alabama, Little Rock, Arkansas, Chester and Hartford, Connecticut, Panama City, Florida, Atlanta and Columbus, Georgia, Louisville, Kentucky, New Orleans, Louisiana, Cleveland, Ohio, Providence, Rhode Island, Burlington, Vermont and Charleston, West Virginia;
   (2) Frozen fruits and frozen vegetables from Birmingham, Alabama to New

portion of the authority sought. It is conceded that the proceedings before the Commission have become administratively final.

Thus, it is to the opinion in *Carolina Carriers* that we turn for a statement of cardinal principles to be applied in arriving at a determination as to whether the Commission was justified in the restrictions which it placed on the geographical scope of plaintiff's operations with respect to areas of origin and destination, mightily labored in briefs and on oral argument.

Of peculiar pertinence to our inquiry is the following language abstracted from that opinion:

"The precise delineation of the area or the specification of localities which may be serviced has been entrusted by the Congress to the Commission. Alton R. Co. v. United States [315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586]. The Act provides the test of 'bona fide operation'. That standard carries the connotation of substantiality. It also makes clear that a holding out to serve a specified area is not alone sufficient. It is 'actual rather than potential or simulated service' which is required. McDonald v. Thompson, 305 U.S. 263, 266 [59 S.Ct. 176, 178, 83 L.Ed. 164]. Substantial, as distinguished from incidental, sporadic, or infrequent, service is required. Substantial service actually rendered may have been confined to narrow limits. Loving v. United States, D.C., 32 F.Supp. 464,

affirmed 310 U.S. 609 [60 S.Ct. 898, 84 L.Ed. 1387]. * * * In addition, the Commission in determining the precise territory which may be served by a particular carrier cannot be unmindful of its responsibility to coordinate the various transportation agencies which constitute our national transportation system [citations omitted].

\* \* \* \* \* \*

"As we indicated in Alton R. Co. v. United States, supra, the purpose of the 'grandfather clause' was to assure those to whom Congress had extended its benefits a 'substantial parity between future operations and prior *bona fide* operations.'" 315 U.S. 480, 481, 62 S.Ct. 726. Accord, Howard Hall Co. v. United States, 315 U.S. 495, 62 S.Ct. 732, 86 L.Ed. 486 (1942).

With these criteria in mind we have carefully reviewed the whole record. We cannot say that, in weighing the specific evidence contained therein against the backdrop of the complexities of this transportation service, a process requiring the exercise of expert, empirical judgment, the Commission transgressed in imposing such geographical restrictions.

We are persuaded by the record in this case that the Commission gave due consideration to plaintiff's status and performance as a common carrier of a restricted number of commodities, the transportation characteristics and mar-

---

Orleans, Louisiana and Memphis, Tennessee;
(3) Frozen vegetables:
  (A) From Philadelphia, Pennsylvania to Louisville, Kentucky and Charleston, West Virginia;
  (B) From Bridgeville, Delaware to New Orleans, Louisiana and Jackson, Mississippi;
  (C) From Searcy, Arkansas to points in New York and to New Haven, Connecticut, Watertown, Massachusetts, Baltimore, Maryland, Greensboro, North Carolina and Scranton and Philadelphia, Pennsylvania; and

  (D) From Houston, Delaware to Memphis and Nashville, Tennessee and Houston, Texas;
(4) Coffee from New York, N. Y. to Chattanooga, Tennessee;
(5) Bananas from New Orleans, Louisiana to Nashville, Tennessee; and
(6) Frozen seafood when moving in the same vehicle and at the same time with frozen fruits, frozen berries or frozen vegetables from Nashville, Tennessee to points in Alabama, Atlanta, Georgia and Indianola and Meridian, Mississippi.

keting pattern of the seasonal agricultural products involved, and the *demonstrated* ability of plaintiff to perform the services described in its application in placing restrictions on the articles which plaintiff may carry between the several points of origin and destination, as required by Willis Shaw Exp. v. United States, supra.

The Commission's report of August 19, 1965, contains an exhaustive analysis of the record evidence. Two examples of ultimate findings derived therefrom may be considered illustrative of its decisional process. With regard to sixteen Michigan origins, the Commission found that "the number of shipments of fruits and berries [before and after the critical date] is much larger than of vegetables" but concluded that "they have been handled as a single class from this territory and should not be separated in arriving at the scope of authority to be granted."[8] Moreover, the Commission pointed out that "[B]ecause of the numerous Michigan origins served, we conclude that the authority granted should be broadened to serve the Lower Peninsula of that State."[9] On the other hand, the Commission found that the only commodity transported by plaintiff from Philadelphia, Pa., as the point of origin, before and after May 1, 1958 had been frozen vegetables,[10] and concluded that its "grandfather" authority should accordingly be limited to that single commodity from such point.[11] This is a far cry from atomizing a carrier's prior service, product by product, so as to restrict the scope of its operations.[12]

We are convinced that the orders of the Commission, delineating the scope of "grandfather" authority to which plaintiff was entitled, are in accord with the applicable law and supported by substantial evidence of record. An order of dismissal will be entered herein.

8. Comm.Rep., sheet 8.

9. Comm.Rep., sheets 8–9.

10. Comm.Rep., App. B at sheets 56–57.

11. Comm.Rep., sheet 19.

12. An approach forbidden by United States v. Carolina Carriers Corp., 315 U.S. 475, 483, 62 S.Ct. 722, 86 L.Ed. 971 (1942).