**Anna BRADLEY d/b/a Bradley's Express and John Bradley, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 11574.**

United States District Court
D. Connecticut.

May 8, 1967.

William R. Moller, Hartford, Conn., Regnier, Moller & Taylor, Hartford, Conn., for plaintiffs.

Wayne Richard Haddad, U. S. Department of Justice, Washington, D. C., for defendant.

Before SMITH, Circuit Judge, and GIBSON and CLARIE, District Judges.

## OPINION

CLARIE, District Judge.

This action seeks to enjoin and set aside the enforcement of a decision of the Interstate Commerce Commission, entered January 25, 1963, and on which a final order was entered on July 7, 1966. The Commission, after a hearing, denied a petition to reconsider the limits of the authority granted in the certificate issued to the plaintiffs pursuant to § 206 (a), the "grandfather" clause of the Interstate Commerce Act, 49 U.S.C.A. § 306(a). The plaintiffs have exhausted administrative remedies and this Court has jurisdiction over the subject matter of the action and the parties, pursuant to 28 U.S.C.A. §§ 2321, 2325, and 2284. The Interstate Commerce Commission is an intervening party defendant pursuant to 28 U.S.C.A. § 2323.

The plaintiff, Anna Bradley, holds a common carrier trucking certificate from the Interstate Commerce Commission under the business name hereinafter referred to as "Bradley's Express"; the plaintiff, John Bradley, is its general

manager. The principal office and place of business is Middletown, Connecticut, where it claims to have carried on continuous trucking operations since 1908. On June 1, 1935, and prior thereto, its irregular overland trucking routes connected multiple towns and cities in defined geographical areas. On October 1, 1935, the Motor Carrier Act of 1935 became effective and § 306(a) thereof required certificates of convenience and necessity, covering transportation operations such as the plaintiffs, excepting those which were authorized under the so-called "grandfather" privilege clause of the statute. This section provided in part:

"* * * (I)f any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time * * * except * * * as to interruptions of service over which the applicant or its predecessor in interest had no control, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate was made * * * within one hundred and twenty days after October 1, 1935."

Pursuant to the provisions of this statutory exception, Bradley's Express (by Robert Bradley, husband and business predecessor of petitioner, Anna Bradley) filed an application with the Commission on February 6, 1936, describing its operations as including multiple irregular routes between Boston, Massachusetts, and Philadelphia and York, Pennsylvania.[1] A certificate of authority was issued by the Commission without a hearing, on November 2, 1940 (Hearing Tr. 32).[2] This certificate was received and accepted by the applicant

---

1. Excerpt from application of statement of Robert Bradley:

"I have performed regular service between Middletown, Conn. and New York, N. Y. over the following routes:

| BETWEEN | AND | VIA HIGHWAY |
|---|---|---|
| Middletown, Conn. | New York, N. Y. | US #14 |
| Meriden, Conn. | New Haven, Conn. | US #5 |
| New Haven, Conn. | Meriden, Conn. | US #1 |

| | Alternate Route | |
|---|---|---|
| Middletown, Conn. | New Haven, Conn. | US #15" |

---

2. Certificate of Public Convenience and Necessity — November 2, 1940 — No. MC85130, reads in part:

"*General Commodities*, except those of unusual value, and except high explosives, livestock, household goods (when transported as a separate and distinct service in connection with so-called "household movings"), commodities in bulk, commodities requiring special equipment, and those injurious or contaminating to other lading, over regular routes,

Between *Middletown, Conn., and New York, N. Y.,* as follows:

From Middletown over Connecticut Highway 14 to Meriden, Conn., thence over U. S. Highway 15 to New Haven, Conn., and thence over U. S. Highway 1 to New York;

From Middletown over Connecticut Highway 15 to New Haven, Conn., thence over the above-specified route to New York; and

Return over these routes to Middletown.

Service is authorized to and from the intermediate and off-route points of New Haven, East Hampton, Portland, Cromwell, Moodus, and Higganum, Conn., Newark, N. J., and those in the NEW YORK, N. Y. COMMERCIAL ZONE, as defined by the Commission in 1 M.C.C. 665."

with the limitations and restrictions contained therein and no appeal was taken therefrom or other action filed.

During subsequent years, the plaintiff acquired additional operating authority, which was approved by the Commission, authorizing its operation between many points described in the original application, but which were not included in the original "grandfather" certificate issued to it. It extended the area in which its trucks could operate on March 22, 1941 (Trial Tr. 34–35), when it purchased Smith's Express (sub-franchise Smith's Express pp. 4–5). Thereafter, in 1950 an additional operational area was acquired which included the transportation of rubber footwear, paper fiber cases, mica, and other general commodities between Middletown, Connecticut, and Ilion, New York.[3] Not until 17 years later, March 6, 1958, did the plaintiff file a petition to enlarge the original "grandfather" rights, which are now in litigation.

After the rejection of the first petition, several others were successively submitted and dismissed by the Commission, pursuant to the General Rules of Practice, 49 C.F.R., 1.101(e) and 1.101 (f). Finally, a petition to reopen was again filed on July 24, 1961; this time, on November 28, 1961, the Commission waived said Rule 1.101(e) and ordered

the "grandfather" proceeding reopened for oral hearing. Thereafter, giving as its reason that some doubt had arisen as to the meaning of its reopening order, the Commission did on January 19, 1962 rescind the order of November 28, 1961, to the extent that it reopened the proceedings for oral hearing. It then reassigned the matter for an oral hearing on March 20, 1962, and ordered notice by publication in the Federal Register (February 14, 1962; Tr. 3, 4–5). After a full hearing before the Examiner, at which the petitioner presented evidence and those protesting appeared and were heard, the examiner prepared findings and recommended that the petition be denied.[4] His report was affirmed by the Commission, Division (1); and a request for reconsideration on March 4, 1963, was denied on May 2, 1963 by said Division (1) acting as an Appellate Division. All subsequent reopening petitions have since been denied and all administrative remedies have now been exhausted.

■ The petitioner stresses the alleged irregularity of the Commission's ex-parte action in rescinding the reopening order of November 28, 1961, and in lieu thereof ordering an oral hearing on the issue of whether the original proceeding should be reopened.[5] This, they claim, constituted arbitrary Commission action, taken without notice or hearing

---

3. Additional operational area acquired November 17, 1950:

   "*Cotton* cloth from Fonda and Broadalbin, N. Y., Woonsocket, R. I., and Canton, Mass. to Middletown, Conn.

   *Rubber footwear* from Middletown, Conn., to Utica, N. Y.

   *Paper and fibre cases* from East Walpole, Mass., to Middletown, East Hampton, Rocky Hill and Cromwell, Conn."

   *Mica* between Portland, Conn., and Boston, Mass.

   *General commodities*, except those of unusual value, and except dangerous explosives, household goods as defined by the Commission, commodities in bulk, commodities requiring special equipment, and those injurious or contaminating to other lading,

   *Between* Middletown, Conn., on the one hand, and, on the other, Ilion, N. Y., and Boston, Mass."

4. Letter from Richard Haddad, Counsel for the United States and Interstate Commerce Commission to the Clerk of this Court, dated November 9, 1966, reads in part:

   " * * * Upon consultation with the Commission's staff, it would seem that the answer to the court's question would be that the Commission probably did not want to interfere with its own injunction proceeding then pending against the plaintiffs in the district court. Had the Commission directly reopened the original proceedings, arguably, the plaintiff might have been immune from the injunction proceedings under 49 U. S.C. 306(a) (1), * * *."

5. Supra, note 4.

adverse to the petitioner's legal rights. They now assert for the first time, that the original reopening order in effect granted the enlargement of the authority sought ex parte. (Tr. 11). While the recision of the reopening order terminated the plaintiff's right to continue operating over the disputed routes pending final adjudication,[6] such irregularity could only be considered relevant, if it were properly raised at the time the Commission sought and was granted an injunctive order in this Court, Civil Action No. 8642, July 8, 1966.

The scope of the March 20, 1962, hearing, concerning the reopening of the "grandfather" proceeding, afforded the petitioner a full and fair opportunity to present all relevant evidence in support of its claims to the Commission. It is the applicant's burden to establish its right to this statutory "grandfather" clause grant, by proving its bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application was made and has so operated since that time. United States v. Maher, 307 U.S. 148, 153, 59 S.Ct. 768, 83 L.Ed. 1162 (1938); Alton R. Co. v. United States, 315 U.S. 15, 25, 62 S.Ct. 432, 86 L.Ed. 586 (1941).

The examiner's review of the evidence before him, including the abstract from the Day Books offered in evidence, demonstrated the sporadic nature of the plaintiff's transportation operations. The Commission found that the petitioner failed to meet the tests laid down in the statute. The evidence demonstrated a lack of continuity in operation from 1934 to 1939, and it therefore concluded it was unnecessary to discuss the amount or quality of the evidence that related to subsequent operations from 1940 to 1962. It specifically found that the petitioner failed to continuously conduct the operations sought during the critical statutory period on June 1, 1935 and thereafter through 1939, between the additional points and territories not encompassed in the original "grandfather" grant or authorities subsequently granted.[7]

On the evidence before it, the Commission was warranted in finding that the petitioner had not met its burden. Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 78, 62 S.Ct. 932, 86 L.Ed. 1283 (1941); Turner v. United States, D.C., 56 F.Supp. 798, 80C (1944); Newsom Trucking Company, Inc., Common Carrier Application, 71 M.C.C. 663, 668 (1957); J. B. Montgomery, Inc., Modification of Permit, 83 M.C.C. 457 (1960); Freightways, Inc., Modification of Certificate, 54 M.C.C. 789, 793 (1952); See, Frisco Transportation Company Extension—Joplin—Miami, 62 M.C.C. 367 (1953); R. B. Wilson Common Carrier Application, 64 M.C.C. 39 (1955).

The scope of review by a Court of law of an administrative ruling is narrow. Essentially, the judicial function is to ascertain whether the findings of the Commission are supported by substantial evidence. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821 (1946). The question of the territorial scope and commodities to be carried under the "grandfather" rights which should be awarded to the plaintiff is in that category of issues the determination of which Congress has entrusted to the administrative expertise of the Commission. Howard Hall Co., Inc. v. United States, 315 U.S. 495, 498, 62 S.Ct. 732, 86 L.Ed. 986 (1942). The proof must be by evidence of "[s]ubstantial, as distinguished from incidental, sporadic, or infrequent, service." United States v. Carolina Freight Carriers Corp., 315 U.S.

---

6. 49 U.S.C.A. § 306(a) (1) provides in part:

"* * * Pending the determination of any such application (for grandfather rights) the continuance of such operation (over the claimed routes) shall be lawful."

7. Decision and Order of the Commission, entered January 25, 1963, No. MC–85130, p. 8.

475, 480, 481, 62 S.Ct. 722, 726, 86 L.Ed. 971 (1942).

The Commission adopted and ratified the findings contained in the trial examiner's report, namely, that the evidence submitted showed "a lack of continuity in operations from 1934 to 1939 required to sustain an additional grant." The findings of the Commission are supported by substantial evidence, and cannot therefore be overturned by this Court.

■ A further reason for denial is that the plaintiff is guilty of laches; it has slept too long upon its rights. Since November 2, 1940, there have been at least two extensions of its authority by purchase. It is to be noted that on July 2, 1951,[8] in this District, both plaintiffs pleaded guilty to a twenty (20) count criminal information, (No. 8512) charging knowing and wilful violations of their certificate then existing, by carrying commodities for hire over routes unauthorized, which routes are now claimed to be within its "grandfather" authority. Beginning in 1958, seven years later, five successive petitions were filed for the correction of the original certificate and denied, before it filed this appeal. Its long delay and acquiescence is fatal. The doctrine of laches has long since erased such little strength, if any, as the claims of the plaintiff might have originally contained. Smith & Solomon Trucking Co. v. United States, D.C., 120 F.Supp. 277 (1954).

■ Ordinarily, a detrimental change in the position of the adverse parties must be found before the doctrine of laches can be applied. Patterson v. Hewitt, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214 (1904). The Court cannot ignore the damaging changes in position, not only to the protestants who appeared before the Commission, but also to a large segment of the area common carrier trucking industry operating under "grandfather" and other type certificates. The present belated petition to reopen this certificate of authority would invite a chaotic condition throughout the industry.

The petitioner's application is denied.

GIBSON, District Judge.

I most respectfully dissent. The factual situation is this: As the result of a Petition filed July 24, 1961, and after due notice to all interested parties, the Interstate Commerce Commission issued an Order dated November 28, 1961, which ordered that the proceeding concerning the Petitioner's "grandfather" operations be reopened in accordance with the petition of July 24, 1961. In making this Order of November 1961, the Commission granted substantial valuable rights to the Petitioner. Under the Order, the Petitioner was entitled to continue his operations over the claimed routes.

Without notice to any interested party, the Commission three months and eight days after issuing its Order of November 28, 1961, assigned the Bradley petition merely for an oral hearing and took fairly substantial valuable rights away from Bradley. It did this, as I say, without notice to any interested party. It issued its Order of January 1962, without taking any evidence, and it issued the Order in an arbitrary manner and without any basis upon which to go. This Order allows the Commission to disregard all rules of evidence and to capriciously make findings by administrative fiat. Such authority, in my opinion, is inconsistent with national justice and comes under the Constitution's condemnation of all arbitrary exercise of power.

Therefore, I would rescind the Order of the Interstate Commerce Commission of January 10, 1962, re-instate its Order of November 28, 1961, and instruct the Commission to proceed, after proper notice to the parties, all in accordance with its Order of November 28, 1961.