CONNECTICUT LIMOUSINE SERVICE,
INC., Plaintiff,

v.

UNITED STATES of America and
Interstate Commerce Commission,
Defendants,

and

Connecticut-New York Airport Bus Co.,
Inc., Intervening Defendant.

Civ. No. 12466.

United States District Court
D. Connecticut.

Feb. 12, 1969.

Palmer S. McGee, Jr. and Timothy P. Bodman, of Day, Berry & Howard, Hartford, Conn., for plaintiff.

John H. D. Wigger, Dept. of Justice, Washington, D. C., Jon O. Newman, U. S. Atty., Hartford, Conn., and J. Daniel Sagarin, Asst. U. S. Atty., New Haven, Conn., for the United States.

Robert W. Ginnane, Gen. Counsel, and Steven Kazan, Atty., I. C. C., Washington, D. C., for the I. C. C.

Allen W. Smith, Hartford, Conn., and S. Sidney Eisen, New York City, for Connecticut-New York Airport Bus Co., Inc.

J. JOSEPH SMITH, Circuit Judge.

This is an action, under 28 U.S.C. §§ 2284 and 2321–2325, to set aside a Decision and Order (Dando) of the defendant, Interstate Commerce Commission, entered on February 21, 1968, and served March 1, 1968, in Docket No. MC–126916, Connecticut-New York Airport Bus Co., Inc.—Common Carrier Application (Darien, Conn.). By that Dando the Commission, Division 1, granted the intervening defendant's application for authority to provide regular-route bus service between New Haven, Connecticut and Kennedy Airport, serving specified Connecticut cities, LaGuardia Airport, and the Long Island Railroad's Flushing and Jamaica Stations, as intermediate points.

On January 28, 1965, Connecticut-New York Airport Bus Co., Inc. of Darien, Connecticut (hereafter Bus Co.), intervening defendant herein, filed an application seeking a certificate of public convenience and necessity authorizing operation as a common carrier by motor vehicle of passengers and their baggage, between New Haven, Connecticut and Kennedy Airport, serving LaGuardia Airport, the Long Island Railroad's Jamaica and Flushing Stations, and certain other intermediate points.

Protests in opposition to the granting of the application were filed by several parties, and extensive hearings were held before examiners of the Commis-

sion. In their report, the examiners recommended that the application be granted.

Thereafter, on February 21, 1968, the Commission, Division 1, adopted as its own (in its Dando) the examiners' Report and Recommended Order, and granted the application. Plaintiff next filed a Petition Seeking Modification of the Dando's effective date, which was denied. The Bus Co. received its certificate of public convenience and necessity on May 16, 1968.

Connecticut Limousine, plaintiff here, has built up a successful operation between the Connecticut cities served by Connecticut-New York Airport Bus Co., Inc., intervening defendant, and the three major New York metropolitan airports, Kennedy, LaGuardia and Newark. Plaintiff is restricted to limousine service by an eleven passenger restriction in its operating authority. When it sought to remove the limitation the Commission refused, in the interest of preserving the existing rapid, luxury limousine type service under the authority theretofore granted. This court upheld the Commission's action. Connecticut Limousine Service, Inc. v. United States, 281 F. Supp. 681 (D.C.1968).

Plaintiff is understandably disturbed by the possible effects of the competition to be offered its existing service by the successful applicant here. Plaintiff contends in this proceeding that the Commission acted on insufficient evidence of public need for the bus service, that the Commission gave too little heed to the disastrous effects the bus competition will have on its existing limousine service, and that the authority granted is too broad, since there is nothing limiting the successful applicant from running limousine service in direct competition in every respect with plaintiff's existing service.

We find that the evidence was sufficient, that the Commission's weighing of the probable effects of competition was well within its competence, and that the authority granted as interpreted

herein is justified on the record taken as a whole.

In Connecticut Limousine Service, Inc. v. United States, supra, we referred to the limitations on our review of the Commission's determinations: "The function of the Court in reviewing the Commission's action in a case such as this is, of course, quite restricted. If there is warrant in the facts and the law for what the Commission has done, that is all that is necessary, for the Commission's judgment is then to be controlling. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); see also Bradley v. United States, 268 F.Supp. 871, 875–876 (D.Conn.1967)." See also Illinois Central RR. Co. v. Norfolk & W. Ry. Co., 385 U.S. 57, 66, 87 S.Ct. 255, 17 L.Ed. 2d 162 (1966), and Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

Plaintiff's contention as we understand it, is that as to some of the points to be served too few public witnesses were presented, as to other intermediate points none at all, so that the record does not measure up to the "substantial evidence" required to establish that additional motor service would serve public convenience and necessity. We find, however, that the quantum of evidence produced was quite sufficient to meet the standard. Some thirty-two witnesses were heard, including representatives of large employers such as Warner Bros. Company of Bridgeport, a ladies' garment manufacturer with a substantial number of traveling employees, Bridgeport Brass, with plants at Bridgeport, Norwalk and Seymour, Edwards Company of Norwalk, manufacturer of electrical signals, Celanese Corporation, as well as students at universities served by the route and a number of individual travelers between some of the Connecticut points served and the New York Airports. There was testimony from which the Commission could find that the proposed bus service was quicker and more convenient than existing rail-bus, bus-bus or rail-taxi service

via New York City terminals, and that the proposed service would be substantially cheaper than the faster, luxury-type limousine service of plaintiff.

Even if it be conceded that public witnesses were in this case necessary, their testimony here was in content and volume surely substantial support for the examiners' conclusions, adopted by the Commission. So far as intermediate comparable points were concerned, the Commission could properly infer that conditions and needs were similar. Plaintiff belittles some of the testimony because of business or other relationships between witnesses and applicant. But credibility is primarily for the examiners who observed the witnesses, and we have no reason to question their determination in this regard.

Such direct bus service as here authorized is not provided by existing carriers. While plaintiff is willing to provide it, its application to do so by lifting the eleven-passenger limitation was rejected, a determination we upheld in Connecticut Limousine Service, Inc. v. United States, supra, because of the probable dilution or deterioration of the existing rapid luxury-type limousine service now provided, if plaintiff's application had been granted.

The evidence showed that plaintiff's service had built up a large, growing and profitable business. Its prices are substantially higher than the proposed bus rates, but its service has advantages in speed and comfort. Some present passengers, according to the testimony, will continue to use it all or part of the time in spite of the greater cost, while some traffic will be attracted to the bus service which because of price is now using inconvenient existing rail or bus service or private automobile transportation, as well as some traffic which will be diverted from plaintiff. Whether the continuing increase in overall traffic between the Connecticut points served by plaintiff and the airports will enable plaintiff to maintain or improve its present volume of traffic and its financial return in spite of diversion of potential traffic to the bus is, of course, not certain.

A witness for plaintiff estimated that diversion of two passengers a trip from present levels would cause plaintiff to operate at a loss, but the examiners, unable from the record to measure the precise amount of the potential diversion, found no reason to believe that it would be so serious as to impair the ability of the limousine operators to continue their operations.

Plaintiff will undoubtedly be faced with some loss of potential passengers by the lower fare bus competition, but whether the two services can exist, side by side, filling successfully a wider public necessity and convenience than either alone is for the judgment of the Commission, cf. National Bus Traffic Ass'n, Inc. v. United States, 284 F.Supp. 270 (N.D.Ill.1967), aff'd 391 U.S. 468, 88 S.Ct. 1847, 20 L.Ed.2d 750, and we cannot say that the Commission has acted without substantial evidence on the record as a whole, or in disregard of the statutory mandates.[1]

1. STATUTES INVOLVED
The National Transportation Policy, Interstate Commerce Act preceding § 1, 49 U.S.C. preceding § 1, provides that:
It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transporation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to cooperate with the several States and the duly authorized officials thereof; and to encourage fair wages and equitable working conditions;—all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and rail, as well as

In view of the concessions of the Bus Company at the hearing in this action, however, we read the grant of authority more narrowly than would ordinarily be justified by its literal terms. Operation is authorized by motor vehicle, which plaintiff contends may be taken to permit limousine as well as bus service, exactly duplicating the existing limousine service of plaintiff. We agree that the certificate may be so read. The Bus Company represented, however, that it did not seek such authority, does not so understand its rights under the certificate, and will operate only a motor bus service. We consider therefore, and so hold, that for this case and any other proceeding involving these parties or their successors the authority is so limited to a motor bus service.

The foregoing may be considered the court's findings of fact and conclusions of law.

The complaint is dismissed.

other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of national defense. All of the provisions of this Act shall be administered and enforced with a view to carrying out the above declaration of policy.

Section 207 of the Interstate Commerce Act, 49 U.S.C. § 307, provides that:

Subject to section 210, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied: *Provided, however,* That no such certificate shall be issued to any common carrier of passengers by motor vehicle for operations over other than a regular route or routes, and between fixed termini, except as such carriers may be authorized to engage in special or charter operations.

Section 208(a) of the Interstate Commerce Act, 49 U.S.C. § 308(a) provides that:

Any certificate issued under section 206 or 207 shall specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermedite and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate; and there shall, at the time of issuance and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, including terms, conditions, and limitations as to the extension of the route or routes of the carrier, and such terms and conditions as are necessary to carry out, with respect to the operations of the carrier, the requirements established by the Commission under section 204(a) (1) and (6): *Provided, however,* That no terms, conditions, or limitations shall restrict the right of the carrier to add to his or its equipment and facilities over the routes, between the termini, or within the territory specified in the certificate, as the development of the business and the demands of the public shall require.

Section 10(e) (B) of the Administrative Procedure Act, 5 U.S.C. § 706 provides, in part, that:

* * * The reviewing court shall * * * hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.