**INTERSTATE COMMERCE COMMISSION, Plaintiff,**

v.

**MITCHELL BROS. TRUCK LINES, a corporation, Defendant.**

**Civ. No. 65–38.**

United States District Court
D. Oregon.

Oct. 18, 1965.

Harold E. Patterson, Regional Attorney, Interstate Commerce Commission, Portland, Or., for plaintiff.

William F. White, Portland, Or., for defendant.

KILKENNY, District Judge.

Plaintiff seeks to enjoin the defendant from transporting, by motor vehicle, fork-lift trucks in interstate commerce. As authority for this transportation, defendant points to Certificates of Public Convenience and Necessity, issued to it by plaintiff, which contain commodity descriptions * * * "machinery" and "heavy machinery." The pertinent certificate was acquired by defendant by purchase of an earlier certificate originally issued by plaintiff in 1939.[1]

---

1. The Lundstrom Application, MC 32882 (1939), 13 MCC 491.

Plaintiff contends that fork-lift trucks are neither "machinery" nor "heavy machinery," within the meaning of the original or following certificates and point to its own decisions in Ray Carter, Inc., 91 M.C.C. 653, 657 (1962) and Arthur William Knight, 63 M.C.C. 643, 648 (1955). Also mentioned is the unreported case of Contract Carrier Service v. Canadian American Trucking.[2] I do not believe those cases are controlling. The *Knight* decision, the progenitor of the other two, is obviously based on what the Commission thought the word "machinery" meant in "transportation parlance." The record before me clearly points to the contrary.

Plaintiff argues that the generic term "machinery" and "heavy machinery," as used in the Certificate, may not properly be construed as authorizing the transportation of fork-lift trucks. In the process of manufacture and assembly, such trucks are said to have lost their identity as items of "machinery" and to have been transformed into a new and an entirely different article, which has a name character and use separate and distinct from the general category of "machinery." This argument follows the decisions in *Knight*, and its off-spring, and other cases cited in this court's opinion in Mitchell Bros. Truck Lines v. United States, D.C., 225 F.Supp. 755 (1963) and aff'd per curiam 378 U.S. 125, 84 S.Ct. 1647, 12 L.Ed.2d 744 (1964).

It is my belief that the certificate, and the facts in this case, are to be distinguished from the facts and certificates before the Commission in *Knight* and similar cases. The same can be said of James F. Black, 48 M.C.C. 695 (1948) and other cases cited in this court's previous *Mitchell* decision. Although the meaning of "machinery" in "transportation parlance" is discussed in those cases, in no place in the record does it appear that an independent inquiry was made, or expert testimony received, as to the meaning of the term in the transportation industry. In the cause before me, a large segment of the record is devoted to expert testimony on that subject, the overwhelming weight of which is that fork-lift trucks are included within the definition of "machinery" and/or "heavy machinery" in "transportation parlance."

A proper finding on the factual issues before me requires an examination into the facts and circumstances surrounding the issuance of the original certificate on the Lundstrom application. Even in Black v. ICC, 167 F.2d 825 (5th Cir. 1948), cert. denied 335 U.S. 818, 69 S.Ct. 40, 93 L.Ed. 373 (1948), one of the pillars on which *Knight* and the other fork-lift decisions are based, the decision, in large part, turned on the testimony of an *expert* in the field of property classifications as related to motor transportation, showing that the phrase "machinery" and "machinery parts" was not used in the motor transportation industry to include "auto parts." Here, the Commission produced no such evidence.

The record shows that *Lundstrom*, at the time of the application and the issuance of the original certificate, was engaged in carrying fork-lift trucks and a straddle truck, which was a vehicle somewhat similar to a fork-lift.[3] The testimony of the original applicant, Lundstrom, is not only convincing, but, with respect to the transportation of a fork-lift and straddle trucks by him at the time of filing the original application, it is almost conclusive. He was a forthright witness. There is no doubt in his mind, but that he had transported many fork-lift trucks prior to the hearing. At least one exhibit, used as part of his application, shows that on June 7, 1937, he transported a Model D lift-truck; this was part of the evidence presented to secure the original certificate, which was issued on January 6, 1939, and which permitted transportation by him of, among other things, * * * "heavy machinery." He definitely recalled the transportation of other "lift-trucks," and "many lift-trucks from the Hyster

---

2. MC–C–2718. March 19, 1962.

3. 13 M.C.C. 491 (Ex. 10) and Lundstrom's testimony (R. 53–54).

Company." Some of these lift-trucks were hauled for the account of the purchasers, others for the account of the shippers. They hauled "many lift-trucks for that day," and "we were hauling a substantial amount of lift-trucks that were being hauled out of this Portland area." This type of machinery was transported under the Lundstrom certificate until it was transferred to Mitchell Bros. in the year 1945. The record is clear that Mitchell Bros., since the year 1945, has consistently hauled this type of fork-lift truck, in different sizes, together with other types of mobile equipment similar in character to the fork-lift. The record here shows that there were 1,283 shipments of fork-lift trucks by Mitchell Bros. between February 14, 1945, and November 24, 1964, with a total poundage of 25,701,657 pounds. The record in this respect shows that there has been considerable growth in this type of transportation since this certificate was acquired by Mitchell in 1945. The record is undisputed that Hyster still manufactures the same type of a fork-lift as was transported by Lundstrom in the Thirties.

■ Plaintiff's argument, that the words "machinery" and "heavy machinery" are unambiguous and that I cannot examine the record in the application proceeding to determine what service was actually intended to be authorized thereby, is completely unsound. The Commissioner, in Deaton Truck Line, Inc., 84 M.C.C. 339, 341–42 (1961), recognized and adopted the more reasonable rule that an examination of the record on the application is authorized and is probably helpful. Nelson, Inc. v. United States, 355 U.S. 554, 557, 78 S.Ct. 496, 2 L.Ed.2d 484 (1948), on which plaintiff relies, does not compel a finding for plaintiff. There, the court restated the well recognized rule that the plain meaning of words is controlling on a court, in the absence of an ambiguity or a specialized usage in the trade. A proper definition of "heavy machinery" or "machinery", when used in the context of the language of the certificates in question, would be impossible if the court did not place itself in the position of the respective parties at the time of filing the application, and the issuance of the certificate. Of the three principal methods of commodity description traditionally employed by the I.C.C.—(1) description by specific name, (2) by generic or class terms, or (3) by reference to intended or future use—it seems, beyond question, that the terms "machinery" and "heavy machinery" were here used in the generic sense. C & H Transportation Co., Inc., 62 M.C.C. 586, 587 (1954). For that matter, the Lundstrom certificate itself, clearly indicates that the phrase "heavy machinery" was used in its generic sense.[4]

■ It is true that in the years since the Lundstrom application, fork-lift trucks have become more numerous and the uses more widely known. That fact, however, should not deprive the defendant of the benefit of the uses permitted under the original Lundstrom application. To hold otherwise, on this record, would deprive the defendant of a constitutional right which is guaranteed by the due process clause. There is no doubt in my mind but that fork-lifts, and other such vehicles designed for use in warehouses or storage yards, were considered as "machinery" or "heavy machinery," not only by the man in the street and the members of the transportation industry, but also the individual members of the plaintiff Commission. We must remember that this type of a vehicle is a replacement for the old hand-truck, once so common in warehouses and yards. The fact that a fork-lift is called a *truck* is of no significance. Its manhandled ancestor carried the same appellation, i. e. hand truck.

Furthermore, we must not overlook the fact that the current I.C.C. policy of distinguishing between fork-lifts and

4. "However, this latter group should normally fall within the *generic term* of building materials or *heavy machinery*."

(Emphasis supplied.) (The Lundstrom Application, 13 M.C.C. 491.)

"machinery" or "heavy machinery" is of recent origin, being first stated in *Arthur William Knight,* supra (1955), some sixteen years after the granting of the Lundström certificate. The author of the *Knight* decision, in arriving at his conclusion, likened a fork-lift truck to automobile parts, automobiles, airplane engines and automatic refrigerators. Again, I point to his statement that the word "machinery" had a well defined meaning, and that such definition did not include a fork-lift in "transportation parlance." To support his statement, the author merely cites Black v. ICC, supra. That decision turned, in part, on the fact that the operations of the certificate holder, *prior* to the issuance of the certificate, did *not* embrace the transportation of automobile parts. Likewise, Mitchell Bros. Truck Lines v. United States, supra, is of no help to the Commission here. This court there pointed to the fact that Mitchell Bros. commenced the hauling of the articles in question long after 1948, the date of the *Black* decision in which a restrictive definition was placed on the word "machinery."

Moreover, *Black* is sound authority for receiving expert testimony to explain the meaning, in the transportation industry, of words such as "machinery" as used in a certificate. The case was decided in the district court and affirmed in the court of appeals on the basis of expert testimony that "machinery" and "machinery parts," as used in that certificate, did not embrace the transportation of automobile parts. It is not authority for similar rulings respecting fork-lifts, simply because credible analogies may be drawn between them and automobiles and automobile parts.

Although I have analyzed the other authorities cited by both plaintiff and defendant, I do not believe that a discussion of those cases would add anything to the validity of my findings or conclusions.

On the facts in this record, I find that fork-lift trucks are, in fact, either "machinery" or "heavy machinery" within the meaning of plaintiff's certificates.

Plaintiff's objection to Exhibit 10 is overruled and the exhibit received in evidence. Plaintiff's objection to Exhibit 11 is sustained.

This opinion, together with the agreed facts in the pre-trial order, shall serve as my findings and conclusions. Plaintiff's complaint must be dismissed.