**D. B. FORD, INC., Plaintiff,**

v.

**UNITED STATES** of America and Interstate Commerce Commission, Defendants, and Anderson Trucking Service, Inc., et al., Intervening Defendants.

No. 4–73–Civ. 554.

United States District Court,
D. Minnesota,
Fourth Division.

May 3, 1974.

As Amended May 24, 1974.

James H. Colwell, Minneapolis, Minn., and J. G. Dail, Jr., Washington, D. C., for plaintiffs.

Robert G. Renner, U. S. Atty., and John M. Lee, Asst. U. S. Atty., Minneapolis, Minn; and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant United States.

Fritz R. Kahn, Gen. Counsel, and Charles H. White, Jr., Atty., I. C. C., Washington, D. C., for defendant I. C. C.

Andrew R. Clark, Minneapolis, Minn., for intervening defendants.

Before HEANEY, Circuit Judge, and DEVITT and LARSON, District Judges.

## MEMORANDUM ORDER

LARSON, District Judge.

Plaintiff D. B. Ford, Inc. (hereinafter Ford) brings this action to set aside the Order of the Interstate Commerce Commission (hereinafter the Commission) denying Ford's application to reopen the proceedings in which Ford's predecessor-in-interest acquired its "grandfather" authorization as an interstate motor carrier under § 209(a)(1) of the Motor Carrier Act of 1935. The Commission also refused to modify Ford's

current certificate of authorization on the basis of public need and required Ford to cease operating in violation of its authorization.

The interstate motor carrier industry first came under Federal regulation with enactment of the Motor Carrier Act in 1935, now known as part II of the Interstate Commerce Act, 49 U.S.C. § 301 et seq. Under the grandfather provisions of the Act, a carrier could obtain authorization by showing that it "was in bona fide operation" on the relevant grandfather date "and has so operated since that time." 49 U.S.C. § 306(a)(1) (common carriers, June 1, 1935, grandfather date); 49 U.S.C. § 309(a)(1) (contract carriers, July 1, 1935, grandfather date).

Ford's predecessor qualified under § 309(a)(1) and was granted authorization as a contract carrier on June 1, 1938, to transport "[t]anks, towers, incinerators, heavy machinery, and building contractors' tools and supplies" between points and places in Illinois, Iowa, Kansas, Minnesota, Missouri, Nebraska, South Dakota, and Wisconsin. A contract carrier permit authorizing the transporting of the same commodities over the same territory was issued to the predecessor on July 25, 1941.[1]

Ford acquired the operating rights in 1957 following the death of its predecessor. D. B. Ford, Inc., Transferee, and Dail B. Ford, dba D. B. Ford (Deceased) (Irene Ford Bates, Executrix), Transferor, Docket No. MC–FC–60244. Ford then initiated a proceeding under § 212(c) of the Act, 49 U.S.C. § 312(c), to convert its predecessor's outstanding contract carrier permit to a common carrier certificate.

Although noting that Ford had been misinterpreting its permit and transporting some commodities that it was not authorized to carry, the Commission felt that Ford had been acting in good faith and accordingly approved the conversion. D. B. Ford, Inc., Conversion Proceeding, 82 M.C.C. 553, 555 (1960). Ford was thus granted a common carrier certificate with the identical authorization as to commodities and territories held by its predecessor.

Ford is an Illinois corporation with its principal place of business in Minnesota. It purports to be a heavy hauler, i. e., a carrier that holds itself out to transport heavy and bulky articles that cannot be handled in the normal operations of general freight carriers.

The instant controversy centers around the scope of "heavy machinery," as that phrase is used in Ford's certificate. Over the years that term has been restrictively interpreted and to a large degree supplanted by the so-called size-or-weight description now used by the Commission to classify heavy hauler operations.[2]

Ford maintains that at least two-thirds of its revenues depend upon its transporting commodities that are not within the current meaning of "heavy machinery," but rather fall within the contemporary size-or-weight description. Therefore it has petitioned the Commission for reopening of the "grandfather" proceedings or modification of its certificate based on public need in order to secure the size-or-weight description.

To fully comprehend the dilemma of Ford and many other "heavy machinery" motor carriers, reference must be made to the history of Federal regulation of

---

1. Ford's predecessor initially was granted authority under § 206(a)(1), 49 U.S.C. § 306(a)(1), to operate as a common carrier in seven midwestern states. The predecessor then objected to the authorization on the grounds that he was operating as a contract carrier and that one State that he served, Nebraska, had been omitted from the authority granted. The Commission revised the authorization accordingly and granted the permit three years later.

2. "[C]ommodities, the transportation of which because of size or weight require the use of special equipment, and related articles and supplies when their transportation is incidental to the transportation of commodities which by reason of size or weight require special equipment, and self-propelled articles each weighing 15,000 lbs. or more restricted to commodities which are transported on trailers."

the industry. In the early years, commodity descriptions set forth in authorizations granted by the Commission were not uniform. *See* Southwestern Transfer Co., Inc., Common Carrier Application, 100 M.C.C. 711, 714 (1966); *see also* Jetco, Inc.—Investigation and Revocation of Certificate, 108 M.C.C. 498, 502 (1969). Heavy haulers were not then, nor have they ever been, recognized as such.

Carriers initially were classified on the basis of the kinds of commodities that they transported. The Commission often used the terms "machinery" or, as here, "heavy machinery" as a generic classification of the authorized operations of heavy haulers. *See* Classification of Motor Carriers of Property, 2 M.C.C. 703 (1937); *see also* Jetco, Inc.—Investigation and Revocation of Certificate, *supra*, 502–503; W. J. Dillner Transfer Co.—Investigation of Operations, 79 M.C.C. 335, 348 (1959), aff'd sub nom. W. J. Dillner Transfer Co. v. Interstate Commerce Commission, 193 F.Supp. 823 (W.D.Pa.1961) (Three Judge Court), aff'd per curiam, 368 U.S. 6, 82 S.Ct. 16, 7 L.Ed.2d 16; Hove Truck Line v. Eldon Miller, Inc., 63 M.C.C. 753, 756 (1955). Carriers given such authorizations were allowed to transport all commodities falling within the Commission's definition of "heavy machinery." *See* Classification of Motor Carriers of Property, *supra*, 710.

In later years, the Commission altered its system of classification from one based on the types of commodities transported to one based on the types of services performed. *See* Ace Doran Hauling & Rigging Co., Investigation, 108 M.C.C. 717, 720 (1969), aff'd nom. Pittsburgh & New England Trucking Co. v. United States, 345 F.Supp. 743 (W.D.Pa.1972) (Three Judge Court), aff'd per curiam, 409 U.S. 904, 93 S.Ct. 235, 34 L.Ed.2d 169. Carriers performing what amounted to heavy hauling services were now authorized under the size-or-weight description. This new terminology first was used by the Commission in 1948. Gallagher Common Carrier Application,

48 M.C.C. 413, 415 (1948); Leroy Osborne Common Carrier Application, 47 M.C.C. 633, 643 (1948). It was formally prescribed by the Commission four years later. Descriptions in Motor Carrier Certificates, 61 M.C.C. 209, 248–251 (1952).

In changing the classification system as it did, the Commission did not intend to vary the scope of then outstanding authorizations such as the one held at the time by Ford's predecessor. *Ibid.*, 213–214.

Along with the modification in the system of classification, the Commission over the years has restrictively interpreted "heavy machinery." Numerous articles that formerly were encompassed by that term under the *Classification* case no longer fall within its ambit under the service-type terminology ushered in by the *Descriptions* case. As a general rule, these commodities are now included within the size-or-weight description.

The result today is that the former "heavy machinery" classification is analogous with, but not as broad as, the contemporary size-or-weight description. *See* Mitchell Bros. Truck Lines v. United States, 225 F.Supp. 755, 759, n. 4 (D. Or.1963) (Three Judge Court), aff'd per curiam, 378 U.S. 125, 84 S.Ct. 1657, 12 L.Ed.2d 744 (1964), reh. denied, 379 U.S. 872, 85 S.Ct. 19, 13 L.Ed.2d 78; North Penn Transfer, Inc.—Petition for Modification, 155 M.C.C. 207, 214–215 (1972). The chief difference is that "heavy machinery" does not include articles that through assembly or manufacture have been transformed into new and different items, such as automobiles, airplanes, farm tractors, and refrigerators. Mitchell Bros. Truck Lines v. United States, *supra*, 225 F.Supp. 759. As pertinent here, Ford's main grievance is that pipe, one of the major commodities that it transports, is not classified as "heavy machinery." *See* Dayton Transport. Corp., Extension—Iron and Steel Articles, 79 M.C.C. 713, 715 (1959).

Seven years after acquiring its certificate in the *Conversion* proceedings, Ford first sought to secure the size-or-weight description for the same territory covered by its existing certificate. The Commission denied its application under § 207, 49 U.S.C. § 307, on the ground that such a broadening of its authorization was not shown to be necessary to meet the needs of its shippers. D. B. Ford, Inc., Extension—Eight States, Docket No. MC–119750 (Sub-No. 1) (1967).

Ford then attempted to acquire the size-or-weight description pursuant to the corrective procedures established by the Commission to resolve uncertainties regarding the scope of "heavy machinery" authorizations. Recognizing the confusion resulting from its shifting classification system and restrictive pattern of interpretations, the Commission has permitted "heavy machinery" carriers to reopen their "grandfather" proceedings in order to determine the authorizations initially intended to be granted. *See* Southwestern Transfer Co., Inc., Common Carrier Application, *supra,* 715; *see also* Nelson, Inc. v. United States, 355 U.S. 554, 561–562, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958).

 Upon an appropriate showing of the commodities transported during the "grandfather" period or for which need was demonstrated by supporting shippers in the "grandfather" proceedings, the Commission has modified "heavy machinery" authorizations to bring them into line with the contemporary size-or-

weight description. *See, e. g.,* Home Transportation Company, Inc.,—Extension-Chattanooga, Tenn., 109 M.C.C. 137 (1969); W. B. Draper Extension—Heavy Machinery, 102 M.C.C. 106 (1966); C. Rickard & Sons, Inc., Common Carrier Application, 72 M.C.C. 281 (1957); Shea-Matson Trucking Co., Extension—Heavy Hauling, 68 M.C.C. 269 (1956); Jesse Coonrod Johnson Common Carrier Application, 61 M.C.C. 783 (1953). Corrective reopening procedures also may be undertaken by successors-in-interest to "grandfather" applicants. *See* Jetco, Inc.—Investigation and Revocation of Certificate, *supra.*

By petition filed with the Commission on January 26, 1972, Ford sought to have the Commission reopen the "grandfather" proceedings in order to determine the intention of the Commission in granting the "heavy machinery" authorization to its predecessor.[3] Ford contended that the record there demonstrates that the Commission intended to authorize the predecessor to transport certain commodities that no longer are included within the current meaning of "heavy machinery" but are now embraced by the size-or-weight description. Accordingly, Ford maintained that its certificate should be modified to reflect the Commission's original intention in contemporary terminology.

Alternatively, Ford sought to have its certificate modified to the size-or-weight description on the basis of public convenience and necessity.[4]

---

3. In the interim between the *Extension* proceedings and the filing of the *Modification* petition, Ford had sought approval to sell its operating rights to Tri-State Motor Transit Company. The transaction was denied by the Commission for reasons not pertinent here. Tri-State Motor Transit Co.—Purchase—D. B. Ford, Inc., Docket No. MC–F–10719 (1970). During the course of the *Tri-State* proceedings, the hearing examiner (now entitled administrative law judge) found that Ford had been transporting at least 40 per cent of its shipments illegally. *Ibid.,* at 29–30. That prompted an investigation by the Commission's Bureau of Enforcement, which has resulted in a civil forfeiture case pending against Ford. United

States v. D. B. Ford, Inc., No. 4–72–Civ. 219. Adjudication of that case has been deferred until resolution of the instant action.

4. The Commission earlier had authorized the sale pursuant to its expedited procedures for certain small scale transfers of operating rights, 49 U.S.C. § 312(b). Various competitors then succeeded in reopening proceedings on the ground that the dormancy made the rights non-transferrable. Upon reopening, Ford's predecessor and Rocket both conceded the dormancy for a period of three years prior to the date of the original transfer order. Accordingly, the Commission vacated its transfer order.

Proceeding under the Commission's streamlined procedures, *see* 49 C.F.R. §§ 1100.45–1100.54, Ford submitted verified written statements regarding the operations of its predecessor, the commodities formerly and currently transported since acquisition of the predecessor's operating rights, and the needs of its relying shippers and interlining carriers. Nine competing carriers opposed the application.

The Commission on September 17, 1973, denied reopening the "grandfather" record because of a temporary cessation of operations in the late 1940s and early 1950s by Ford's predecessor. This dormancy had been the basis for the Commission's denial in 1954 of the predecessor's petition to transfer its operating rights to another company. *Rocket Transfer Company—Purchase— Dail B. Ford, 62 M.C.C. 503 (1954).*[5]

The Commission now reasoned that Ford's application constituted a "grandfather" proceeding, that the predecessor's dormancy meant that it had not operated continuously since the relevant grandfather date, and that this cessation barred Ford under the continuity of operations requirement of the "grandfather" provisions of the Act. 49 U.S.C. §§ 306(a)(1), 309(a)(1).

The Commission also ruled that modification of Ford's certificate was not warranted on the basis of public need. Finally, Ford was "advised to cease transporting commodities not presently authorized" by its certificate. D. B. Ford, Inc., Petition for Modification of Certificate, Docket No. MC–119750 (1973).

Ford then brought this action seeking convening of a Three Judge Court to review the Commission's decision pursuant to 28 U.S.C. §§ 2321–2325. A temporary restraining order against enforcement of the Commission's order was granted by the requesting Judge on No-

vember 9, 1973. The requesting Judge also allowed seven of the nine protestants in the *Modification* proceedings to intervene in the instant action pursuant to 28 U.S.C. §§ 2284, 2323 and F.R.Civ. Proc. 24.

This Court was then convened. Its jurisdiction is based on 28 U.S.C. §§ 2321–2325 and 28 U.S.C. § 2284.

A threshold issue here is the timeliness of the instant action. Under 28 U. S.C. § 2401(a), there is a six year statute of limitations for the bringing of civil actions against the United States from the time that the cause of action arises.

■ Although this case draws into question proceedings of the Commission dating back to 1938, it is the Commission's order in the *Modification* proceedings that is directly being challenged here. Its refusal in 1973 to go back and look at the record in the "grandfather" proceedings as well as its denial of modification on the basis of public need give rise to this suit.

The cause of action arose last September when the Commission made its final order denying relief in the *Modification* proceedings. *See* Crown Coat Front Company v. United States, 386 U.S. 503, 513, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); Zidell Explorations, Inc. v. United States, 427 F.2d 735, 737, 192 Ct.Cl. 331 (1970); N. V. Philips' Gloeilampenfabrieken v. Atomic Energy Commission, 316 F.2d 401, 406 (D.C.Cir. 1963). This suit was filed less than two months later. Thus, § 2401(a) does not bar its maintenance.

■ Even if the cause of action arose in 1938, at the time of the issuance of the "grandfather" authorization, § 2401(a) would be no bar. Although this action was commenced by a civil complaint, as a review of the Commission's order it is in the nature of an appellate proceeding pursuant to 28 U.S.C. §§

---

5. Ford's alternative request sought insertion of the size-or-weight description in its certificate in lieu of "heavy machinery." The proceedings did not involve a formal applica-

tion for certification based on public convenience and necessity under § 207, 49 U.S.C. § 307.

2321–2325. The convening of a Three Judge Court for this purpose, pursuant to 28 U.S.C. § 2284, differs from the ordinary procedure for appellate review of orders of administrative agencies. The normal procedure is to seek review from the appropriate appellate court within 60 days of the entry of the agency order. 5 U.S.C. § 1034.

But §§ 2321–2325 are silent as to time limitations for the bringing of actions to review orders of the Commission. The Chairman of the Commission has taken the position that there is no statutorily-prescribed time period during which such review must be sought. *See* Testimony of George M. Stafford, Hearings on S. 663 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 93d Cong., 1st Sess., at 16 (1973); *see also* Testimony of Bruce B. Wilson, Deputy Assistant Attorney General, *Ibid.*, at 6.

■ This testimony supports the view that § 2401(a) is inapplicable to judicial review of Commission orders.[6] Because of the long time period that has elapsed since the "grandfather" proceedings, the doctrine of laches is the pertinent consideration. But it is inapplicable to the facts of this case.

Even though the Commission has continuously been narrowing the meaning of "heavy machinery" over the years, Ford cannot be said to have been sleeping on its rights during this time. As the Commission itself has recognized, interpretation of authorizations under its evolving standards "to say the least, has been fraught with uncertainties." Equipment Transport, Inc., Extension—Heavy Hauling, 111 M.C.C. 74, 85 (1970). Other "heavy machinery" modification petitions have been granted up to and even beyond the time that the instant action was filed. *See, e. g.,* Mariano Brothers, Inc.—Petition for Modification, Docket No. MC–115122 (Op. Rights Bd.) (Feb. 4, 1974).

Although Ford had been put on notice concerning its misinterpretation of its authorization in the *Conversion* proceedings in 1960, it was not until after the Commission recently began investigating its operations that Ford clearly saw the grave need to attempt to clarify or update its authorization. *See* n. 3, *supra.* It acted promptly thereafter in initiating the *Modification* proceedings that gave rise to the instant action.

The intervening defendants appear to have prospered over the years and have not shown any concrete evidence of disadvantage resulting from Ford's not having brought this action sooner. The only prejudice to them results from Ford's having developed a clientele during this time period. *See* Scott Truck Line, Inc. v. United States, 339 F.Supp. 1169, 1173 (D.Colo.1971) (Three Judge Court).

Hence, we hold that neither the statutory time period contained in § 2401(a) nor the doctrine of laches bars this action.

Turning to the merits, our authority is limited to determining whether there is warrant in the law and the facts for what the Commission has done. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Prinsburg Coop Fertilizer Co. v. United States, 338 F.Supp. 1059, 1060 (D.Minn.1971) (Three Judge Court), aff'd per curiam, 405 U.S. 906, 92 S.Ct. 955, 30 L.Ed.2d 778 (1972).

We conclude that on the record before us there is not.

In order to obtain authorization under the "grandfather" provisions of the Act, a carrier must have been "in bona fide operation" on the relevant date and have "so operated since that time." 49 U.S.C. §§ 306(a)(1), 309(a)(1). In United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 480–482, 62 S.Ct. 722, 86 L.Ed. 971 (1942), the Supreme Court announced the "[s]ubstantial

6. No Court has ever passed upon this issue. In Smith & Solomon Trucking Co. v. United States, 120 F.Supp. 277 (D.N.J.1954) (Three Judge Court), the issue was men-

tioned but not passed upon because it was determined that laches barred review there. 120 F.Supp. at 283.

service" test for purposes of the "bona fide operation" requirement of the Act. Under *Carolina Carriers* and progeny,[7] the post-"grandfather" hiatus in operations by Ford's predecessor would be fatal to the securing of additional rights beyond those authorized in the "grandfather" proceedings.

■ But Ford is not seeking greater authorization than was intended to be granted to its predecessor. It seeks only to have confirmed its operating rights as of the time of the "grandfather" proceedings, a decade prior to the predecessor's cessation of operations. The Commission erred in reasoning that the post-"grandfather" discontinuance precluded reopening the "grandfather" record for this limited purpose.

■ The continuity of operations requirement applies up to the time that the "grandfather" authorization is granted. *See* Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 62 S. Ct. 932, 86 L.Ed. 1283 (1942); Melman v. United States, 231 F.Supp. 503, 506 (S.D.Iowa 1964) (Three Judge Court); Howard Hall Co. v. United States, 38 F. Supp. 556 (N.D.Ala.1941) (Three Judge Court), rev'd on other grounds, 315 U.S. 495, 62 S.Ct. 732, 86 L.Ed. 986 (1942).

But cessation of operations has never been considered to be a bar to rights acquired prior to the hiatus. Such discontinuance cannot in itself result in the forfeiture of rights authorized as of the "grandfather" date. *See* Quaker City Bus Co.—Purchase—Blackhawk Line, Inc., 38 M.C.C. 603, 606 (1942). Once acquired, "grandfather" rights cannot be lost unless pursuant to the procedures and for the grounds set forth in § 312(a). *Ibid.* But proceedings have not been brought against Ford, or its predecessor, under § 312(a).

■ Defendants have conceded, and we hold, that Ford has a right to trans-

port the commodities that its predecessor transported during the "grandfather" period and those for which authorization was intended to be granted in the "grandfather" proceedings. *See* Interstate Commerce Commission v. Mitchell Bros. Truck Lines, 250 F.Supp. 636, 638 (D.Or.1965). This is in accordance with the congressional intention that parity be achieved between operations prior and subsequent to the "grandfather" date. *See* United States v. Carolina Freight Carriers Corp., *supra*, 315 U.S. 481, 62 S.Ct. 722; Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586 (1942). It also is consistent with the Commission's policy in "heavy machinery" modification cases.

On the record before us, however, we are unable to determine if the Commission's denial of Ford's application for reopening and for modification conforms to this view of the law. We, therefore, remand this matter to the Commission with instructions to it to take such further action as will complete the record and enable it, Ford, and this Court to determine the authority held by Ford's predecessor under its "grandfather" authority.

The procedure to be followed upon remand is up to the Commission. Mitchell Bros. Truck Lines v. United States, 273 F.Supp. 430, 431 (D.Or.1967) (Three Judge Court). Since the size-or-weight description may encompass different commodities than were intended to be authorized under the "heavy machinery" clause in the "grandfather" permit, the Commission need not grant the size-or-weight description if it finds that those commodities were not intended to be authorized in the "grandfather" proceedings. But it may not diminish the authorization that was then intended to be granted. Interstate Commerce Commission v. Mitchell Bros. Truck Lines, *supra*, 250 F.Supp. 638.

---

7. *See, e. g.,* W. J. Dillner Transfer Co. v. United States, 277 F.Supp. 420 (W.D.Pa. 1967) (Three Judge Court); Keystone Motor Express, Inc. v. United States, 228 F. Supp. 793 (S.D.W.Va.1964) (Three Judge Court); North Penn Transfer, Inc.—Petition for Modification, *supra*, 215–216; Freightways, Inc., Modification of Certificate, 54 M.C.C. 789 (1952).

What we now require are findings and conclusions indicating the extent of the authority granted in the "grandfather" proceedings. *See* Nelson, Inc. v. United States, *supra*, 355 U.S. 558–559, n. 4, 78 S.Ct. 496, 2 L.Ed.2d 484. If the present certificate held by Ford conforms to it, the certificate may be allowed to stand as is. But if the authority as now construed is not as broad as operations carried on during the "grandfather" period and intended to be authorized in those proceedings, the certificate must be modified to bring it in line with what was there intended.

Because of the disposition we make, it is unnecessary now to review the Commission's determination that no modification is warranted on the basis of public need.

Accordingly,

It is ordered:

That this case be, and it hereby is, remanded to the Commission for further consideration consistent with the views expressed herein.

It is further ordered:

That the Temporary Restraining Order entered November 9, 1973, be, and it hereby is, dissolved.

It is further ordered:

That an interlocutory injunction be, and it hereby is, granted, enjoining defendants United States of America and the Commission, and their officers, agents, and employees from allowing to become effective the Orders entered by the Commission on April 3, 1973, and September 17, 1973, in the proceedings entitled Docket No. MC–119750, D. B. Ford, Inc., Petition for Modification of Certificate, et al.

It is further ordered:

That this Order remain in effect until further Order of this Court.

It is further ordered:

That this Court shall retain jurisdiction over the instant case, pending further action by the Commission and further Order of this Court.